**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 29, 2018[*]
Decided May 29, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-3463

| | |
|---|---|
| DONALD WAYNE EASTMAN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:15cv585 |
| BIOMET, INC., et al., *Defendants-Appellees*. | Robert L. Miller, Jr. *Judge*. |

## O R D E R

After Donald Eastman accepted $25,000 to settle a products-liability suit against Biomet (and related companies), he filed a second suit seeking an additional $175,000. The district court determined that the release Eastman signed during the first suit barred the second suit. We agree and thus affirm the district court's judgment.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

This suit arises from multi-district litigation that consolidated nearly 2,500 cases in which plaintiffs alleged that they had suffered injuries from Biomet's artificial hip devices. *See In re Biomet M2a Magnum Hip Implants Prods. Liab. Litig.*, No. 3:12-md-2391 (N.D. Ind.). Biomet and a committee of plaintiffs entered into a Master Settlement Agreement that outlined procedures for determining the settlement awards that individual plaintiffs would receive. The agreement provided that certain categories of plaintiffs would presumptively receive $200,000, except that Biomet could offer a reduced amount in appropriate cases. The agreement also provided for mediation of disputes about settlement awards.

Biomet offered Eastman $25,000 to settle his suit. In an email to Eastman's attorney, Biomet's attorney gave four reasons for the reduction: (1) Eastman had no medical records from the four-and-a-half years after he received the artificial hip device, (2) he never had been definitively diagnosed with injuries caused by the device, (3) he had suffered physical injuries in a brawl the day before he had surgery to replace the device, and (4) his medical records described him as "a horrible patient." Biomet's attorney added that the parties could arrange mediation if Eastman desired.

Rather than pursue mediation, Eastman accepted Biomet's offer and signed a broad release of his claims. In return for the $25,000 payment, he released Biomet from "all claims … of whatever kind … whether known or unknown … [that are] in any manner connected with" Biomet's hip-replacement device. The company then mailed a check for $25,000 to Eastman's lawyer, who forwarded the net proceeds to Eastman. The district court, at the parties' request, dismissed Eastman's suit with prejudice.

Two months after that dismissal, Eastman sued Biomet for breach of the Master Settlement Agreement. He alleged that Biomet breached the Agreement by reducing his settlement award from $200,000 to $25,000 without "good cause." Eastman, now pro se, sued in federal court in Arkansas, and, over Eastman's objections, that court transferred the case to the multi-district litigation in the Northern District of Indiana.

After Biomet moved for summary judgment, Eastman offered a surprising and unavailing response to Biomet's contention that the release Eastman had signed to settle the first suit barred his second suit: He argued that his signed release represented a mere counteroffer—as opposed to a binding contract—because before he signed it he made what he calls "clandestine changes," apparently by retyping three passages in the 16-page document. First, he changed "irrevocable" to "revocable" in a provision that had read: "By signing this Release, the RELEASING PARTY understands that it is

irrevocable." Second, he changed "binding" to "nonbinding" in a provision that had read that the "Release shall be final and binding upon RELEASING PARTY." Finally, he changed the choice-of-law provision to state that the release would be governed by Arkansas law instead of Indiana law. Eastman did not tell his attorney or Biomet about these changes before or after he signed and returned the release; the changes did not come to light until Eastman pointed them out during his second suit. No matter, the district court explained in entering summary judgment for Biomet. The Master Settlement Agreement gave both parties the right to dispute the base settlement amount, but it "required mediation in disputed cases." And Eastman waived his right to dispute the settlement award by accepting and retaining Biomet's $25,000 payment to settle his case.

On appeal Eastman challenges the district court's conclusion that the release bars his second lawsuit. We add two observations to elaborate on the district court's correct disposition. First, although the parties debate the legal significance of Eastman's "clandestine changes" to the release, that question is academic. Even if we accepted Eastman's dubious argument that his changes rendered the release a nullity, he would have a potential breach-of-contract claim against Biomet for $200,000 only if the Master Settlement Agreement entitled him to that sum. It does not; rather, it provides a framework for the parties to negotiate the specific settlement payments that each plaintiff would receive. And under that framework, Eastman had to pursue mediation if he was dissatisfied with Biomet's settlement offer. Eastman cannot invoke that agreement as a basis for a contract claim for $200,000 while simultaneously ignoring the provision conditioning that sum on a process that he has eschewed.

Second, even if Eastman had a right to $200,000 under the Agreement, he could not ask the district court to consider unraveling his settlement of any claim under the Agreement because he did not tender the settlement money back to Biomet. A settlement agreement is a contract, *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015), and a party may not contest the validity of a contract until he has returned the consideration that he received under it. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 717 (7th Cir. 2009); *Fleming v. U.S. Postal Serv. AMF O'Hare*, 27 F.3d 259, 260–61 (7th Cir. 1994). Eastman has not offered to return the $25,000 that the defendants sent to his former attorney. He cannot shirk his obligations under a contract that he wants to challenge while retaining its benefits. *See Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000).

AFFIRMED