NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 26, 2019[*]
Decided February 27, 2019

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

Nos. 17-3208, 18-1168 & 18-1398

| | |
|---|---|
| CHRISTOPHER GOODVINE, *Plaintiff-Appellant*, | Appeals from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | Nos. 17-C-1223 & 16-C-890 |
| KEVIN A. CARR, et al., *Defendants-Appellees*. | William C. Griesbach, *Chief Judge*. |

**O R D E R**

Christopher Goodvine, a Wisconsin inmate, appeals the dismissal of two lawsuits against prison staff for violating the First, Eighth, and Fourteenth Amendments. *See* 42 U.S.C. § 1983. He alleged that prison staff failed to treat his mental illnesses adequately, failed to prevent him from attempting suicide (which he repeatedly did), and retaliated against him for filing complaints about his treatment.

---

[*] We have agreed to decide the case without oral argument because the appellate briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

The district court screened both cases and allowed them to proceed against some of the defendants. But the district court later dismissed the suits as a sanction because Goodvine submitted a false declaration to support his claims in both cases. After an evidentiary hearing regarding that declaration, the district court concluded that Goodvine willfully presented a fraudulent and false declaration and that he lied about it under oath. Because the court did not abuse its discretion in sanctioning Goodvine, we affirm the judgments.

Goodvine, an inmate at Green Bay Correctional Institution, has longstanding mental-health needs and lives with a variety of mental-health conditions, as demonstrated by prison medical records submitted by the defendants in response to Goodvine's motion for a preliminary injunction. Goodvine has diagnoses of Antisocial Personality Disorder, Adjustment Disorder, and Borderline Personality Disorder. He also has a long history of self-harm and suicide attempts that have led prison officials to place him on "observation status" in the prison's restrictive housing units to monitor him regularly. At some points, Goodvine was placed on constant-observation status, where prison staff continuously had a sight-line to Goodvine. When he left constant-observation status, Goodvine remained on observation status, during which prison staff checked on him every fifteen minutes to confirm his safety.

In July 2016, Goodvine filed his first suit, after he purposefully cut himself with a razor. In his complaint, Goodvine alleged that he was on "constant" observation at the time of the incident and that prison staff had failed to monitor him adequately. Goodvine attached to his complaint a sworn declaration, signed by a prison guard, in which the guard allegedly admitted that he left his post despite the order for constant monitoring. The declaration also stated that the guard was told by his supervisors to falsify the prison's observation log to reflect that Goodvine was on normal, not constant, observation status. When the defendants learned of this declaration a year after its filing (the reasons for the delay are not relevant here), they moved to dismiss the case as a sanction, contending that it was a false declaration with the court. The defendants invoked the district court's inherent authority as the basis of their motion. In anticipation of an evidentiary hearing, Goodvine moved for recruited counsel to depose witnesses and the court denied the motion.

The district judge held an evidentiary hearing on the declaration's authenticity. He heard testimony from several witnesses including Goodvine and the prison guard who supposedly authored the declaration. The guard, Davee McClinton, testified that he did not make any of the statements recorded in the declaration. Instead, he had

signed a blank piece of paper that he understood would acknowledge a request slip for psychological services after Goodvine complained that staff had failed to submit his earlier requests. McClinton's supervisor testified that Goodvine's constant-observation order was not in effect at the time, and that he never told McClinton to alter the observation log to reflect periodic, instead of constant, observation. But Goodvine testified that McClinton made the statements in the declaration and signed it. To support his testimony, Goodvine presented another inmate who testified that he heard McClinton agree to sign the declaration and overheard him making the statements.

The district court found "clear and convincing evidence that Goodvine filed a false and fraudulent declaration with the court" and also lied under oath. The court credited McClinton's testimony, which was corroborated by his supervisor and the documentary evidence. The psychological services order at the time stated that Goodvine was to be monitored every fifteen minutes, not constantly. And the purportedly falsified observation log contained other handwritten entries before and after McClinton's entries that were in dissimilar handwriting, indicating to the court that McClinton had not changed anything. Finally, the court discredited Goodvine's testimony and that of his fellow inmate, highlighting Goodvine's financial motive to manufacture the evidence to achieve a settlement as he had done in prior cases, and expressing skepticism that the other inmate overheard the softspoken guard's confession from several cells away. The court dismissed the complaint, invoking Federal Rule of Civil Procedure 11 as well as its inherent authority. It also issued a strike under 28 U.S.C. § 1915(g) because the action was "malicious."

Meanwhile, in October 2016, Goodvine had filed a second suit. He alleged that prison officials were deliberately indifferent to his mental health by failing to protect him from self-harm and failing to establish adequate prison policies to address serious mental illness. He also claimed that the officials' decision to isolate him in segregation with "no officer contact" was retaliation for his submission of the declaration from McClinton in his first suit. Goodvine also sought to enjoin the alleged "no officer contact" order, which he claimed prevented him from seeking help from guards and put him at "imminent risk of suicide." After a hearing, the district court denied the preliminary injunction. The court concluded that, even assuming Goodvine's account was true, he had not shown an imminent risk of serious injury or harm that an injunction could remedy. Citing treatment records and Goodvine's court filings, the court concluded that Goodvine retained the ability to communicate his medical and legal needs. Later, when the court sanctioned Goodvine in his first case for filing the

false declaration and lying under oath, it also dismissed this case and assessed a second strike under 28 U.S.C. § 1915(g).

Goodvine separately appealed the judgments in both of his cases, and we consolidated the appeals for decision. We review the district court's findings of fact for clear error and we review for an abuse of discretion the court's use of dismissal as a sanction. *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015).

Goodvine contends that the court clearly erred in finding that his hearing testimony was at times "convoluted," that he appeared "defensive and evasive," and that the testimony of Goodvine's fiancée was "rehearsed." Yet these credibility findings are the unique province of trial courts, and Goodvine's disagreement does not establish clear error. *See Houlihan v. City of Chicago,* 871 F.3d 540, 549 (7th Cir. 2017); *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 447–48 (7th Cir. 2006). He further protests the court's inferences about the witnesses' motivations, namely that the prison's psychological services staff member had no motive to change Goodvine's placement order to indicate less frequent observation, and that Goodvine had a financial motive to manufacture evidence to support his allegations. He counters that the staff member changed the order to "cover up" for the prison's neglect, yet he offers no evidence to substantiate this contention. And the district court did not err in attributing Goodvine's deception to a desire for monetary settlement; the judge had questioned Goodvine extensively about his past litigation history, and Goodvine acknowledged that he had settled past deliberate-indifference claims with DOC officials. Further, the court's inferences are permissible and reasonable exercises of a district court's authority to find facts and make credibility determinations. "If there are two permissible views of the evidence, the trial court's choice between them cannot be clearly erroneous." *Gaffney*, 451 F.3d at 448.

Goodvine's other arguments also fail to demonstrate a clear error. First, Goodvine protests the district court's rejection of another inmate's testimony that he heard, from several cells away, McClinton confessing his inattention to Goodvine. But the court sensibly reasoned that McClinton was softspoken in his testimony, that cell blocks are often noisy, and that a guard would likely not speak loudly when admitting his own job mistakes. In any case, the court could have disbelieved this witness simply because he credited McClinton's testimony that the conversation never took place. Second, Goodvine does not establish clear error in the finding that McClinton did not recreate the observation log after the fact. In response to the judge's rationale that the entries were on a page that contained different handwriting from other officers who

were on duty before and after McClinton, Goodvine asserts that McClinton re-did only his own entries in the log. But this contention makes no sense; if McClinton were tasked to hide the fact that Goodvine required constant observation, he would have had to forge all the entries on the same page as his own, as all of them are consistent with McClinton's testimony that Goodvine was checked in 15-minute increments.

Goodvine also argues that the district court abused its discretion in dismissing the suits as a sanction for his false declaration because factual disputes should go to the jury, and pretrial motions for sanctions are not the "appropriate vehicle to test the truth or falsity of allegations." But we conclude that the district court properly dismissed the cases after determining that Goodvine had deliberately defrauded the court. Courts have "sound discretion" to dismiss suits with prejudice as a reasonable sanction for falsifying evidence, which "undermines the most basic foundations of our judicial system." *Secrease*, 800 F.3d at 402.

But, Goodvine contends, the district court erred by not specifying whether it sanctioned him under Rule 11 or under the court's inherent authority. He does not dispute that the court had inherent authority to dismiss his cases, but he submits that the court was obliged to proceed under Rule 11. Then, he would have had the benefit of a safe-harbor notice permitting him to withdraw the false declaration from the record (and, effectively let him get away with one fraud attempt before dismissing). Yet even if Rule 11 is the proper vehicle, we have not required "strict compliance" with its safe-harbor provision when there was substantial compliance or when compliance was impossible. *See United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015). And here, at minimum, there was substantial compliance with Rule 11's safe-harbor provision. The defendants' motion, though premised on inherent authority alone, argued that dismissal was warranted because the declaration was false and fraudulent. *See id*. Goodvine was on notice of the basis for possible sanctions and the possibility of dismissal. He then had five months before the evidentiary hearing to withdraw his declaration, but instead, he defended it at the hearing, perjured himself, and conscripted other witnesses to testify to its authenticity.

In any case, we are reluctant to entertain the argument that, in an instance of fraud on the court, Rule 11 trumps the court's inherent powers. We ordinarily encourage reliance on a statute or rule before the invocation of inherent authority if the statute or rule adequately sanctions the conduct. *See In re Rimsat, Ltd.*, 212 F.3d 1039, 1048 (7th Cir. 2000); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). But a court may employ its inherent powers when a rule or statute also applies, particularly when

the litigant's "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court" and the conduct was beyond the reach of the rules. *Chambers*, 501 U.S. at 50–51; *accord Mach v. Will Cty. Sheriff*, 580 F.3d 495, 502 (7th Cir. 2009). In this case, if Goodvine had been invited to withdraw the affidavit under Rule 11's safe-harbor provision, his fraud would have escaped punishment. Further, Rule 11 functions to "deter baseless filings." *See Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013). It does not principally target manufactured evidence or lies under oath; this is litigation misconduct of a different degree.

Goodvine further submits that the judge's critique of failure-to-protect jurisprudence in cases like this one and his skepticism of Goodvine's mental illness demonstrated the judge's hostility towards Goodvine's case. Even if the judge questioned his theory of relief, he gave Goodvine ample due process, and Goodvine fails to show clear error in the judge's factual findings and inferences. *See Secrease*, 800 F.3d at 401. Thus, those findings provided a sound basis for dismissal.

Finally, Goodvine contests that the district court's assessment of strikes under 28 U.S.C. § 1915(g) was improper because this section itself does not authorize strikes—it only prevents prisoners with three strikes from proceeding in forma pauperis—and Goodvine is ineligible to receive a strike because he paid the filing fee. But § 1915(g) does authorize strikes for frivolous or malicious filings. *See Brown v. Wis. State Pub. Def.'s Office*, 854 F.3d 916, 918 (7th Cir. 2017), *reh'g denied* (May 3, 2017); *Moran v. Sondalle*, 218 F.3d 647, 651 (7th Cir. 2000). And a dismissal qualifies as a strike under § 1915(g) regardless of whether the prisoner proceeds in forma pauperis. *Duvall v. Miller*, 122 F.3d 489, 490 (7th Cir. 1997).

We have considered Goodvine's remaining arguments, and none merits further discussion. The district court's judgments are AFFIRMED.