In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2867

RALPH LISBY, as the Personal Representative of the Estate of
ASHLYNN LISBY, deceased,

*Plaintiff-Appellant,*

*v.*

JONATHAN HENDERSON, individually and in his official
capacity as a police officer,
and CITY OF INDIANAPOLIS, INDIANA

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cv-01186-SEB-DLP — **Sarah Evans Barker**, *Judge.*

———————————

ARGUED APRIL 12, 2023 — DECIDED JULY 18, 2023

———————————

Before SCUDDER, KIRSCH, and LEE, *Circuit Judges.*

KIRSCH, *Circuit Judge.* While driving to work, Indianapolis
Police Officer Jonathan Henderson tragically struck and
killed pedestrian Ashlynn Lisby on the shoulder of a high-
way. Relevant to this appeal, Lisby's estate sued Officer Hen-
derson under 42 U.S.C. § 1983, alleging that he had violated

Lisby's Fourteenth Amendment substantive due process
rights. The district court entered judgment on the pleadings
for Officer Henderson on that claim, concluding that the com-
plaint failed to plead sufficient facts plausibly suggesting that
Officer Henderson had acted with the criminal recklessness
necessary to establish a due process violation. We agree with
the district court and affirm.

I

Because the estate's claim was dismissed on the pleadings
under Federal Rule of Civil Procedure 12(c), we take the facts
from the amended complaint as true and view the pleadings
in the light most favorable to the estate. See *Bergal v. Roth*, 2
F.4th 1059, 1060 (7th Cir. 2021).

On the night of May 6, 2020, Ashlynn Lisby and Marcus
Lewis Jr. walked along the shoulder of State Road 37 in Indi-
anapolis. Lisby was eight-months pregnant with Lewis's
child at the time, and the two were walking back to their mo-
tel. Officer Jonathan Henderson of the Indianapolis Metropol-
itan Police Department was driving to work in his police ve-
hicle on the same road. He was driving 78 miles per hour, or
33 miles per hour over the posted speed limit, when he ille-
gally changed lanes over a solid white line and his vehicle
partially crossed the fog line onto the shoulder of the road.
Officer Henderson then struck Lisby without seeing her while
still traveling at 55 miles per hour. Lisby was transported to a
hospital, where she was pronounced dead. Lisby and Lewis's
child was born at the hospital by emergency Cesarian section
but died shortly after delivery. It is undisputed that Officer
Henderson was acting within the course and scope of his em-
ployment as a police officer when he killed Lisby.

Ralph Lisby, Ashlynn's father and the representative of her estate, sued the City of Indianapolis and Officer Henderson in state court. Lisby brought a Fourteenth Amendment claim under 42 U.S.C. § 1983 against Officer Henderson and state-law negligence claims against both Officer Henderson and the City. The defendants removed the suit to federal court and moved for partial judgment on the pleadings. The district court granted the motion for partial judgment on the pleadings, disposing of all federal claims and relinquishing its supplemental jurisdiction over the remaining state-law claims. The sole issue on appeal is whether the district court properly granted the motion with respect to Lisby's § 1983 claim against Officer Henderson.

II

We review a district court's grant of judgment on the pleadings de novo, accepting all well-pleaded facts as true and drawing all reasonable inferences in the light most favorable to the non-moving party. *Bergal*, 2 F.4th at 1060; *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014).

As a preliminary matter, Lisby argues the district court should have converted the motion for judgment on the pleadings to a motion for summary judgment and allowed the parties to conduct discovery. The district court ordinarily has discretion to convert a motion for judgment on the pleadings to a motion for summary judgment; only when the district court considers materials beyond the pleadings is it required to convert a Rule 12(c) motion to one for summary judgment. Fed. R. Civ. P. 12(d); *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). Because the district court did not stray beyond the pleadings, and Lisby has not identified any evidence that would have any bearing on the motion,

the district court did not err in dismissing the complaint on the pleadings. See *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015).

Our analysis of whether allegations of a police officer's dangerous driving during a non-emergency rise to the level of a substantive due process violation is guided by our decisions in *Hill v. Shobe*, 93 F.3d 418 (7th Cir. 1996), and *Flores v. City of South Bend*, 997 F.3d 725 (7th Cir. 2021). These cases hold that a plaintiff seeking relief under § 1983 for such a claim must plead sufficient facts to establish that the officer acted with "criminal recklessness—which is the same as deliberate indifference." *Flores*, 997 F.3d at 729 (quoting *Hill*, 93 F.3d at 421). "It is enough to plead plausibly 'that the defendant had actual knowledge of impending harm which he consciously refused to prevent.'" *Id.* (quoting *Hill*, 93 F.3d at 421). "The key question is whether the officer had sufficient knowledge of the danger such that one can infer he intended to inflict the resultant injury." *Id.* (cleaned up).

*Hill* and *Flores* illustrate what is required at the pleading stage. In *Hill*, we held that "motor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation actionable under § 1983, absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it." 93 F.3d at 421. In other words: "For a defendant to be reckless in a constitutional sense, he must be criminally reckless." *Id.* The complaint in *Hill* alleged that an on-duty police officer ran a red light and killed the plaintiff; at the time, the officer was speeding late at night in a non-emergency situation, and he wasn't using his headlights, emergency lights, or sirens. *Id.* at 420. We found the allegations insufficient to infer the officer

subjectively knew of the danger he created and that he consciously disregarded it. *Id.* at 421. Merely showing that the officer created a "recognizable but generic risk to the public at large," we explained, was insufficient. *Id.* at 421–22.

In *Flores*, however, we found that the plaintiff had alleged enough to survive a motion to dismiss on her § 1983 claim regarding an officer's reckless driving. 997 F.3d at 728, 730. The complaint alleged that the defendant officer heard over the radio that five other officers were preparing for a routine traffic stop; without any request for his assistance or justification, the defendant officer raced through a residential neighborhood at speeds of up to 98 miles per hour—nearly 70 miles per hour over the speed limit. *Id.* at 728. The officer did not properly use his lights or sirens and ultimately charged through a red light and crashed into the victim's car, killing her. *Id.* We found that the complaint's allegations of the officer's "reckless conduct, unjustified by any emergency or even an order to assist in a routine traffic stop that five officers had under control, allows the inference that he subjectively knew about the risk he created and consciously disregarded it." *Id.* at 730. In such a situation, the officer's decision to "driv[e] blind through an intersection at 78 to 98 miles per hour" could be viewed as criminally reckless. *Id.* "The law does not provide a shield against constitutional violations for state actors who consciously take extreme and obvious risks." *Id.*

We conclude that Lisby's complaint was properly dismissed. The complaint alleges that Officer Henderson was going about 30 miles per hour over the speed limit on the highway when he illegally changed lanes, partially crossed onto the shoulder, and struck Lisby without seeing her. Lisby

argues that Officer Henderson reasonably understood that his driving was dangerous and he was willing to let a fatal collision occur. But the mere knowledge that driving at high speed at night could have fatal consequences is not enough to allege a constitutional violation: "Allegations of a public official driving too fast for the road conditions are grounded in negligence, not criminal recklessness, … and unintended loss of life resulting from a state employee's lack of due care does not implicate the due process clause." *Hill*, 93 F.3d at 421 (citations omitted). Instead, as we said in *Flores*, the complaint must allege facts permitting an inference that he had "actual knowledge of impending harm which he consciously refused to prevent." *Flores*, 997 F.3d at 729 (quoting *Hill*, 93 F.3d at 421).

Lisby's complaint does not allow such an inference. Unlike the officer in *Flores*, Officer Henderson was not racing through a residential area at speeds tripling the posted speed limit, but was merging onto an on-ramp of a major highway. Allegations of Officer Henderson's highway speeding and illegal lane change, when coupled with the allegation that he never saw Lisby before the fatal collision, do not suggest that he disregarded extreme or obvious risks and was "willing to let a fatal collision occur." *Id.* at 730 (quoting *Hill*, 93 F.3d at 421). We agree with the district court that Officer Henderson's actions, as alleged in the complaint, are grounded in negligence rather than criminal recklessness. As such, Lisby failed to allege a constitutional violation.

AFFIRMED