In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-3289

GAYL A. FLYNN, individually and as Special Representative of
the Estate of EDWARD LOUIS FLYNN,

*Plaintiff-Appellant,*

*v.*

CONSOLIDATED CITY OF INDIANAPOLIS AND
MARION COUNTY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cv-02279-JPH-MJD — **James P. Hanlon**, *Judge.*

ARGUED OCTOBER 24, 2024 — DECIDED AUGUST 7, 2025

Before EASTERBROOK, KIRSCH, and PRYOR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Gayl Flynn sued the Consolidated
City of Indianapolis and Marion County and five of its police
officers for their roles in the tragic death of her husband, Ed-
ward Flynn. The officers were engaged in a high-speed pur-
suit of fleeing suspect James Shirley when Shirley crashed
into Edward's car and killed him. Gayl, as representative of

Edward's estate, sued the officers for violating Edward's Fourteenth Amendment substantive due process rights and the City under *Monell v. Department of Social Service of New York*, 436 U.S. 658 (1978), for failing to train its officers. But because the officers' actions in this emergency situation do not support a Fourteenth Amendment claim, we affirm the district court's grant of summary judgment to the officers. And because the officers didn't violate Edward's constitutional rights, we likewise affirm summary judgment to the City on Gayl's *Monell* claim for failure to train.

I

Because this is an appeal from summary judgment, we construe the facts in the light most favorable to Gayl Flynn and take all reasonable inferences in her favor. See *Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007). The events giving rise to Edward Flynn's death began when Officers Daniel Butler and Omari Stringer were dispatched to investigate a potentially stolen F-150 truck parked at an AutoZone. Upon arriving, Officer Butler parked behind the truck and knocked on the driver's window. He told the driver—later identified as James Shirley—to open the door. Shirley instead backed into Officer Butler's patrol car, almost hitting Officers Butler and Stringer in the process, and fled.

A high-speed chase ensued. Officer Stringer activated his emergency lights and pursued Shirley. It was dark out, but the roads were well lit and weather conditions were clear. Officer Butler followed and called the pursuit by informing other officers of speeds and locations over his radio. But Officer Butler soon fell behind and became unable to call the chase, so a third officer, Sergeant Robert Rider, began supervising from his patrol car a few miles away. Sgt. Rider twice

requested speed and traffic conditions, but Officers Stringer and Butler did not respond. The lack of responses led Sgt. Rider to consider terminating the pursuit. Although he came very close to doing so, he ultimately chose not to because a fourth officer, Officer Dustin Pervine, was nearby and drove up to 100 miles per hour to join the chase and call the pursuit.

While fleeing, Shirley turned off the truck's lights and headlights, sped, ran stop lights and stop signs, and drove on the sidewalk and shoulder of the highway. A fifth officer, Officer Cody St. John, attempted unsuccessfully to end the pursuit by putting stop sticks on the road. During the pursuit, Officer Stringer exceeded 80 miles per hour and at times reached 90. The pursuit ended after about five and a half minutes when Shirley ran a red light at 61 miles per hour and struck Edward's car. Edward, a nearly 50-year veteran of The Indianapolis Star, was on his way home from work. When Shirley collided with him, Edward had a green light and was waiting in the intersection to turn left. He was pronounced dead at the hospital.

Gayl sued the Consolidated City of Indianapolis and Marion County, as well as Sgt. Rider and Officers Butler, Stringer, Pervine, and St. John. She sought damages under 42 U.S.C. § 1983, claiming that the officers violated Edward's Fourteenth Amendment substantive due process rights and that the City failed to train its officers. The district court granted summary judgment for the officers and City.

II

In general, the standard for determining whether a government official violates someone's Fourteenth Amendment substantive due process rights is whether the violation

"shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). The Supreme Court has refined this standard and established more specific formulations that apply in emergency and nonemergency situations when police officers cause death. *Id.* at 836–37, 848, 850–54. In the emergency context of a sudden, high-speed police chase resulting in officer-caused death, the standard is intent to harm. *Id.* at 836–37, 854; *Steen*, 486 F.3d at 1019, 1023. That is, the officer must have an intent to cause physical harm, and that intent must be "unrelated to the legitimate object of arrest" and "unjustifiable by any government interest." *Lewis*, 523 U.S. at 836, 849, 854. By contrast, in the context of a nonemergency police pursuit resulting in officer-caused death, the standard is deliberate indifference—that is, that the officer acted recklessly. *Id.* at 836–37, 851–54. Although this case does not neatly map onto these two standards—here, the fleeing suspect, not the police, caused Edward's death—the officers and City nevertheless argue that we should assess their Fourteenth Amendment liability for an intent to harm rather than under an even stricter standard. To resolve this case, we accept their argument without determining the proper standard for evaluating police liability when a criminal suspect causes a bystander's death.

The district court also accepted the officers' and City's argument, rejecting Gayl's Fourteenth Amendment claim by applying the intent to harm standard. Gayl concedes there was no intent to harm, but she argues that the district court should have applied the deliberate indifference standard instead—under which, she says, her claim prevails. This argument is without merit. The circumstances of this high-speed police chase presented an emergency. In such a situation, we do not assess officers' Fourteenth Amendment liability for

deliberate indifference. *Id.* No matter whether we look for an intent to harm or something more, Gayl's claim fails.

Setting aside that Shirley (not the officers) caused Edward's death, the facts of this case are closely analogous to the Supreme Court's decision in *Lewis* and ours in *Steen*, both of which involved emergency situations and, accordingly, applied the intent to harm standard. In *Lewis*, the Supreme Court found that a 75 second police chase reaching speeds of 100 miles per hour following an attempted traffic stop constituted an emergency, and it held that intent to harm was the appropriate standard to evaluate the officers' potential due process violations for the resulting death. 523 U.S. at 836–37, 853–54. Admittedly, *Lewis* alone is not dispositive: a 75 second pursuit is distinguishable from the five and a half minute chase that occurred here. But in *Steen*, we found an emergency situation where, following an attempted traffic stop, a deadly police chase ensued, lasting six minutes and reaching speeds of 100 to 130 miles per hour. 486 F.3d at 1019, 1024. Here, the police chase began for even more serious reasons than a failed traffic stop: Shirley was in a suspected stolen truck, crashed into a patrol car, and nearly hit two officers. The chase lasted five and a half minutes and reached speeds of 80 to 100 miles per hour. Given the parties' framing of the case, the facts here are not distinguishable from those in *Lewis* or *Steen*, so the district court properly concluded that this was an emergency situation and applied the intent to harm standard.

Gayl argues *Lewis* and *Steen* are inapposite and instead likens this case to our decision in *Flores v. City of South Bend*, 997 F.3d 725 (7th Cir. 2021), where we found a police pursuit resulting in officer-caused death was not an emergency and applied the deliberate indifference standard. *Id.* at 729–30; see

also *Lisby v. Henderson*, 74 F.4th 470, 472–73 (7th Cir. 2023) (explaining that the situation in *Flores* was not an emergency). But *Flores* is readily distinguishable. In *Flores*, the defendant-officer raced at speeds of up to 98 miles per hour to join a "routine traffic stop." 997 F.3d at 728. None of the other officers signaled the situation constituted an emergency, none asked for the defendant-officer's assistance, and none pursued the driver. *Id. Flores* did not involve a failed traffic stop or the chase of a suspect. *Id.* By contrast, this case involved an attempted investigation of a stolen truck, in which the suspect backed into a patrol car and then fled at high speed and where the officers worked as a team to pursue him. Unlike *Flores*, this sudden, high-speed pursuit was an emergency situation, so we do not evaluate the officers' conduct for deliberate indifference.

Gayl also argues that this case was a nonemergency because Sgt. Rider had the opportunity to deliberate and considered terminating the pursuit. See *Lewis*, 523 U.S. at 851 (The deliberate indifference "standard is sensibly employed only when actual deliberation is practical."). But Sgt. Rider's brief consideration of whether to terminate the pursuit does not rise to the level of actual deliberation required to constitute a nonemergency situation. Rather, nonemergency situations require "opportunity for forethought," *Schaefer v. Goch*, 153 F.3d 793, 798 (7th Cir. 1998), and "the luxury … of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations," *Lewis*, 523 U.S. at 853. Sgt. Rider's opportunity for consideration was anything but. In deciding whether to call off the pursuit, he was "faced with a dangerous, fluid situation, in which [he] w[as] forced to make decisions in haste, under pressure, and without the luxury of a second chance."

*Schaefer*, 153 F.3d at 798 (cleaned up). "When government officers face the sort of unforeseen and rapidly changing circumstances that demand unreflective decisions with potentially grave consequences on every side," an emergency situation exists, and deliberate indifference is not the applicable standard. *Id.* That was the case here for Sgt. Rider.

For these reasons, we conclude that the district court properly granted summary judgment against Gayl. Because the officers did not violate Edward's constitutional rights, Gayl's *Monell* claim also fails. See *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee.") (quotation omitted).

AFFIRMED